UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

Case No. 18-20719-02 & -05
Honorable Thomas L. Ludington

D-2 DEMETRIUS TYRONE CHAPPEL
D-5 MALCOLM DWIGHT OBRYAN

        Defendants.
_____/

**ORDER DENYING MOTION TO SUPPRESS EVIDENCE AND MOTION TO DISCLOSE EVIDENTIARY INFORMATION**

On October 24, 2018, Defendants Demetrius Chappell and Malcolm Obryan were indicted for conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §841(a)(1), which reads, in relevant part, that "it shall be unlawful for any person knowingly or intentionally to … distribute … or possess with intent to … distribute … a controlled substance," and 21 U.S.C. § 846, which states, "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The conspiracy involved 500 grams or more of a substance that contained cocaine, a Schedule II controlled substance.

In counts three, four, and seven of the indictment, Obryan (three and seven) and Chappell (four) were indicted for the use of a communication facility, *i.e.* a telephone, in the commission of a felony under the Controlled Substances Act, in violation of 21 U.S.C. § 843(b), which provides that it is "unlawful for any person knowingly or intentionally to use any communication facility in committing … a felony under [the Controlled Substances Act]."

On July 3, 2019, Chappell filed a motion to suppress and a motion for disclosure of evidentiary information. ECF Nos. 151, 152. On July 8, 2019, Obryan filed a notice of joinder in Chappell's motions. ECF Nos. 153, 154. Defendants first request that this Court suppress the electronic surveillance gathered by the Government. Defendants move to suppress intercepted communications under 18 U.S.C. § 2518(10)(a), which states, "Any aggrieved person … may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that (ii) the order of authorization or approval under which it was intercepted is insufficient on its face."[1]

Defendants allege that the original order entered on July 19, 2018, as well as subsequent orders granted on August 3, 2018, September 5, 2018, September 24, 2018, October 10, 2018, and October 23, 2018, violate 18 U.S.C. § 2518(1)(c) in that they failed to adequately demonstrate "necessity" by the Government to use a wiretap as an investigative technique.

Defendants also request the disclosure of evidentiary information relating to their necessity claim in order to substantiate their motion to suppress evidence and claims that this "deliberate or reckless failure to include" the evidentiary information "may give rise to a motion for a hearing pursuant to Franks v. Deleware [sic]." ECF No. 152 at PageID.477. More specifically, Defendants claim that the FBI, inter alia, had additional information and facts pertaining to the investigation that were consciously not included in the original or subsequent affidavits in order to make the wiretap seem more necessary, thereby affecting the Court's judgment in granting the warrant.

The Government's response to Defendants' motion provides "[a]ll of the Title III applications, affidavits and orders can be provided to the court upon request." ECF No. 162 at

---

[1] Defendants are aggrieved persons under the definition in 18 U.S.C. § 2510(11) which provides "'aggrieved person' means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed;"

PageID.527. The Government made a similar representation during the motions hearing on July 18, 2019. In order to assist the Court in resolving Defendants' motions, the Government was directed to submit to the Court for in camera review the Title III applications, affidavits, and orders that are at issue in Defendants' motions, ECF Nos. 151 and 152, by July 24, 2019.

## I.

Defendants argue that [1] the body of intercepted conversation acquired pursuant to the electronic surveillance orders granted on July 19, 2018, August 23, 2018, September 5, 2018, September 24, 2018, October 10, 2018, and October 23, 2019 should be suppressed for failure to state adequate necessity in the affidavits submitted to the Court; and [2] that the Court should compel the Government to provide Defendant with oral and written reports, statements of cooperating witnesses, confidential sources, consensually recorded conversations, and drug purchases, inter alia. Defendants further request that the Court grant leave to file any appropriate *Franks* motion after "all case discovery" is provided.

Defendants first argue that the original affidavit presented to the Court requesting a warrant for electronic surveillance did not establish necessity as required under 18 U.S.C. § 2518(1)(c). ECF No. 151 at PageID.464. Defendants allege that the affidavits presented for subsequent extensions also failed to meet the required standards under Title III. *Id*. at PageID.465. Defendants claim that Obryan's crimes were already "fully exposed" and that the Government was already "well aware of Obryan's typical method of operation." *Id*. at PageID.486. Defendants also cast doubt on the Government's assertion that informant CHS-2 is unwilling to testify, seemingly implying that the Government misrepresented to the Court the extent to which electronic surveillance was necessary. *Id*. at PageID.469. Finally, Defendants assert that the affidavits "simply list[] some common or traditional technique[sic] providing reasons why they would not

be successful and ignoring how much evidence has already been gathered on the target and others." *Id*. at PageID.470.

Defendants also argue that the Court should compel the Government to disclose oral and written reports, statements of cooperating witnesses, confidential sources, consensually recorded conversations, and drug purchases, inter alia. ECF No. 152 at PageID.478. Defendants "suggest that the omission … of information [by the Government] is particularly insidious because of its difficulty to uncover." *Id*. at PageID.481. Defendants further request that the Court grant leave to file any appropriate *Franks* motion after "all case discovery" is provided. *Id*. at PageID.478.

In their responses submitted on July 15, 2019, and hearing on the motions on July 18, 2019, the Government rebutted both arguments. In its response to the motion to suppress wiretap evidence, the Government outlined various investigative techniques that had been considered and used, together with an explanation of their limitations. ECF No. 162 at PageID.532-543. These included search warrants for text message content (lacked context), GPS location on target phones and vehicles (unreliable and ineffective), surveillance (did not yield substantial results), undercover officers (highly dangerous), and pen registers, trap and trace devices (limited information acquired). *Id*. Further, trash searches were not carried out because the targets lived in apartment complexes and law enforcement did not attempt to interview or subpoena suspects or associates because they thought that it was unlikely they would succeed in gaining relevant information. *Id*. at PageID.540-541. The Government also explained the limited nature of the information they were able to acquire through confidential human sources because of the close relationships between members of the conspiracy. *Id*. at PageID.538.

During the motion hearing, the Government clarified, "we weren't able to determine who, in fact, was involved in this conspiracy. It wasn't until we obtained the wiretap authorizations that

we then were able to determine the scope of the conspiracy and those who were involved." ECF No. 173, page 6, lines 5-9. The Government further explained that the necessity portion did not deviate between the first and subsequent affidavits because the "problem[s] before [they] got [their] first wiretap … remained a problem through the last wiretap." *Id*. at page 7, lines 24-25.

With regard to the motion for disclosure of evidence, the Government noted that "defendants have offered no federal rule, federal statute, or case law to support their request … for information." ECF No. 163 at pageID.547. The Government then asserted that the only oral or written report, statement of cooperating witness, consensually recorded conversations, and drug purchases that were not provided to Defendants were those which included information relating to confidential human sources. *Id*. at PageID.457-459.

## II.

After an in camera review of the affidavits, the Court is prepared to address [1] the motion to suppress evidence and [2] the motion for disclosure of evidentiary information.

### A.

"The basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968." *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988). Under this Act, specifically in 18 U.S.C. § 2518(1)(c), the Government may conduct electronic surveillance when it provides "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." In other words, the Government may establish necessity for a wiretap by showing that traditional investigative procedures (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) are too dangerous to try.

In their response, the Government outlined several investigative techniques that they (1) tried and failed; (2) reasonably appeared unlikely to succeed if tried; or (3) were too dangerous to try. First, the Government used search warrants, physical surveillance, confidential sources, interviews, pen registers, trap and trace devices, subscriber information, and toll analysis, but were unable to gather sufficient information to uncover the scope of the conspiracy. ECF No. 162 at PageID.532-543. The present case is distinguishable from *United States v. Rice*, where the District Court discovered that, contrary to what law enforcement had stated in its affidavit, no physical surveillance had actually been conducted on Rice. 478 F.3d 704, 711 (6th Cir. 2007). In the present case, the Government's response clearly outlines specific attempts to employ traditional investigative methods. ECF No. 162 at PageId.536. For example, the Government provides a play-by-play of an attempt to use physical surveillance on June 1, 2018; however, the target was able to employ surveillance detection routes and the attempt was thus unsuccessful. *Id*.

Second, the Government determined that certain investigative methods were reasonably unlikely to succeed. *Id*. at PageID.540-541. For example, trash pulls could not be employed because all known residential addresses were apartment complexes with shared trash facilities. *Id*. at PageID.540. The Government also considered grand jury subpoenas, but they were likely to result in targets invoking Fifth Amendment privileges and alerting their coconspirators to the ongoing investigation. *Id*. at PageID.541. Third, the Government determined that it would be "highly dangerous" to use undercover agents and the length of time required was not suited to the investigation. *Id*. at PageID.540.

Though Defendants assert that "[a]gents may act only if there is genuine, investigative need … not out of investigative greed," ECF No. 167 at PageID.557, it is a well settled principal that "the burden of proof is upon the defendant to display a violation of some constitutional or statutory

right justifying suppression," *United States v. Rodriquez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). Furthermore, law enforcement is not required to "exhaust every conceivable non-wiretap investigative technique;" they must merely prove "serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985).

Finally, with regards to Defendants' claims that Obryan's crimes were already "fully exposed," ECF No. 151 at PageID.468, "it is unrealistic to require the termination of an investigation before the entire scope of the criminal enterprise is uncovered," even if the Government has some knowledge of a conspiracy, or even "evidence sufficient to prosecute one of the conspirators." *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir. 1975). For these reasons, the request to suppress the electronic surveillance is denied.

**B**.

Defendants further request that this Court [1] compel the Government provide: oral and written reports; statements of cooperating witnesses; confidential sources; consensually recorded conversations; drug purchases; and [2] that the Court grant Defendants leave to file any *Franks* motion after the discovery has been provided. Both of these requests will be analyzed in turn.

**i**.

First, with regards to the disclosure of information, Defendants cite in their motion several cases where law enforcement made false or misleading statements, leading to findings that, when "purged" of these statements, the warrant was lacking in necessity. *See, e.g. United States v. Blackmon*, 273 F.3d 1204 (9th Cir. 2001). However, Defendants do not cite any cases or federal law that would allow them to request the information they are seeking. Instead, Defendants claim

that the Government "attempts to transform the issue into a question of the Jencks Act so they can hide behind it." ECF No. 167 at PageID.555.

Under the Jencks Act, "no statement or report in the possession of the United States which was made by a Government witness … shall be the subject of subpoena, discovery, or inspection until said witness has testified." 18 U.S.C. § 3500. In other words, if witness(es) testify at trial, the United States would be required by the Jencks Act to provide that information to Defendant. "The Jencks Act generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at trial." *United States v. Short*, 671 F.2d 178, 185 (6th Cir. 1982). But "[t]he defendant is only entitled to the statement after the witness has testified." *Id*.

According to the Government, the only oral or written reports, statements of cooperating witnesses, consensually recorded conversations, or drug purchases that were not provided to the Defendants were those that were "associated with confidential human sources" or those that were unrelated to the Defendant's case. ECF No. 163 at PageID.547-549. The Government has provided assurances that should any of these confidential sources testify, "any and all Jencks material" will be provided to the Defendant. *Id*. at PageID.548.

Defendants' attempt to differentiate their request from Jencks material falls short. Defendants neither identify any requirement for the Government to include any information beyond "a full and complete statement," under 18 U.S.C. § 2518(1)(c), nor any statute or case that would require the Government to provide any further evidentiary information to them. In their reply, Defendants conclude, "[a] motion is simply a request. There is no reason why a defendant cannot make any reasonable request." ECF No. 167 at PageID.555. Be that as it may, the Court must have a reason grounded in legal authority to grant that request.

**ii**.

Secondly, Defendants state that, contrary to the Government's assertions that Defendants have not offered a federal statute or case that would support their request for the evidentiary information, Defendants have "pointed to the statute and cases where federal agents have failed, deliberately, or recklessly, to honor it." *Id*. However, "allegation[s] of perjury or reckless disregard" in an affidavit are addressed in a *Franks* hearing. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). Traditionally, in order to be granted a *Franks* hearing, a defendant must satisfy two elements: [1] a substantial preliminary showing that a false statement was made knowingly, intentionally, or with reckless disregard of the truth in the affidavit; and [2] the false information was essential to the probable cause determination. *Franks v. Delaware*, 438 U.S. at 155-56.

First, Defendants have not made a "substantial preliminary showing that false statements were made knowingly, intentionally, or with reckless disregard of the truth." *Franks v. Delaware*, 438 U.S. at 155. A "misstatement in [the] affidavit [is] a specific prerequisite for obtaining a *Franks* hearing." *United States v. Pirosko*, 787 F.3d 358, 370 (6th Cir. 2015). Defendants' only specific allegation is that the FBI falsely claims that an informant, CHS-2, was unwilling to testify. ECF No. 152 at PageID.481. Defendants' argue that CHS-2's "lengthy criminal history" and "central role in this case," ensures his testimony in exchange for "lenient treatment." *Id*. This assertion by Defendants is purely speculative. The ability "to point to a misstatement if … allowed to examine the Government's [evidence] is the very sort of speculative claim that district courts are not supposed to hear." *United States v. Pirosko*, 787 F.3d at 370. Because the first element is not met, it is unnecessary to determine whether the "false information" was material.

Accordingly, it is **ORDERED** that Defendants' Motion to Suppress, ECF No. 151, is **DENIED**.

It is further **ORDERED** that Defendants' Motion to Disclose Evidentiary Information, ECF No. 152, is **DENIED**.

Dated: August 14, 2019                                          s/Thomas L. Ludington
                                                                THOMAS L. LUDINGTON
                                                                United States District Judge